UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Ronald Curtis, et al., | § § § | |
| Plaintiffs, | § § | |
| versus | § § | Civil Action H-09-3569 |
| City of Houston, et al., | § § § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.     *Introduction.*

Investigators used dogs to pick suspects' scents from several others to corroborate circumstantial evidence against them. Three men have sued twelve parties for violating their constitutional rights. They will recover from none.

2.     *Background.*

     A.     Curtis.

Ronald Curtis was arrested for attempting to rob a cellular phone store in June of 2007 in Harris County. Around eleven o'clock that night, officers were notified that someone was trying to break into the store. When they arrived, they saw a car nearby belonging to Curtis.

The officers approached it and noticed a crow bar in the center console. When they returned from checking Curtis' identification, it had been moved to under the rear floorboard. The door to the store was partially pried open, and the markings were nearly identical to the bar found in his car. There were other tools in the car – a sledgehammer, bolt cutter, and tire irons. The ground around the store's door was muddy and the concrete step in front of the door had mud smudges; both Curtis and his passenger had mud on their shoes. Officers also found two unopened cellular phones and a battery – the brand sold at the store – in Curtis's car, both unopened. The officers took Curtis and his passenger to the police station.

Curtis originally told the police that the tools were his, and that he and his passenger had been working on cars before stopping at the restaurant next to the store to eat. He later denied owning the tools. The passenger first told police that he had gone with Curtis to the store to pay his bill. He later said that Curtis had driven to the store and had attempted to break in. The magistrate ruled that there was no probable cause; both men were released that day.

Officer Strivers, a police officer for Houston, had been assigned to a string of robberies of the same phone store chain. He received a photograph of Curtis and compared it with a surveillance video from the other robbed stores. Based on this evidence, Strivers asked Keith Pikett, a Deputy with the Fort Bend County Sheriff's Department, to conduct a dog scent lineup using Curtis's scent. Strivers got scent swabs from the three robbed stores. Curtis refused to voluntarily give a sample, but Strivers obtained it after having a subpoena issued. Pikett got the swabs and did a dog scent lineup. It showed that Curtis's scent was at all three stores.

With this supplemental evidence – the videos and the lineups – a magistrate found probable cause to hold Curtis for the robbery. A few months later, the magistrate found probable cause for the other robberies. Curtis was later released in April without a trial; he had been in prison for eight months.

B.   *Johnson and Bickham.*

Jerome Perkins, Elaine Foster, and Barbara Bailey were found murdered in their home in November of 2007. They had been shot in the head and the house had been set on fire. Sargent W. Anthony and Officer R. Chappell work for the Houston Police and were assigned to lead the investigation.

The officers found two guns and a charred gasoline can among the house's remains. They traced the can to a nearby gas station. The station's surveillance video showed two people buying it. The officers released still images from the video to the public asking for assistance to identify them.

In the weeks following the murder, Anthony and Chappell spoke with several witnesses who identified one of the men in the video as Cedric Johnson, a maintenance man at an apartment complex that Perkins had managed. People reported that the two men had frequently argued. The officers met with Johnson and noticed that his body and tattoos resembled the man in the video. Johnson said that he was at work at the time of the murder; his employer said

that he had gotten off work at three o'clock that afternoon, several hours before. His job site was located directly across the street from the station where the can was bought.

The next month, Anthony and Chappell arrested Johnson for an outstanding traffic warrant. They questioned him about the murders; he denied any involvement. After giving a voluntary scent sample, he was released. The next day, the officers asked Pikett to conduct a dog scent lineup using Johnson's scent and the evidence found at the scene. The lineup showed that his scent was on all three items. With this evidence, the district attorney charged Johnson with two of the murders. A magistrate found probable cause to hold Johnson for the murders, and a grand jury indicted him.

A few months after his arrest, Will Samuels, Johnson's cell mate, notified the district attorney's office that Johnson had admitted the murders to him. Samuels gave details that were known by only the investigators, eyewitnesses, and suspects. In April of 2008, Samuels met with police and identified Curvis Bickham as Johnson's accomplice. Based on this information, Anthony and Chappell conducted a dog scent lineup using Bickham's scent. The lineup showed that his scent was on the revolver found at the scene. With this evidence, the district attorney charged Bickham with murder. He was indicted by a grand jury for two of the murders.

Several months later, Anthony received a letter from Samuels saying that Bickham, Johnson, and members of Johnsons's gang had threatened and attacked him in prison. Four months later, Samuels wrote several officers claiming that he – not Bickham and Johnson – had committed the murders.

Samuels later told Anthony that he was not the murderer. He said that he had confessed to prevent further harassment while in prison. Chappell confirmed with Samuels's employer that he had been working in Boston at the time of the murders, and a dog scent test showed that his scent was not on the evidence. After Samuels confessed, the charges against Johnson and Bickham were dropped, and they were released in May. Johnson had been in jail for sixteen months; Bickham for seven.

3.   *Procedure.*

A year and a half after Curtis's release, and seven months after Johnson and Bickham's, they sued every institution and officer who was tangentially related to their cases because the

dog scent lineups had been used. This included a city, a county, a sheriff, two police sergeants, four police officers, and a sheriff's deputy:

- City of Houston
- Fort Bend County
- Milton Wright
- M. McStravick
- W. Anthony
- E. Cisneros
- J. Robles
- R. Chappell
- C. W. Strivers
- Keith Pikett

The state claims against McStravick, Anthony, Cisneros, Robles, Chappell, Strivers, Wright, and Pikett were dismissed without prejudice in February of 2010. McStravick and Cisneros and Robles were dismissed with prejudice in September.

4.   *Pikett and the Dogs.*

Curtis says that Pikett violated his constitutional rights by using fabricated junk science – the dog scent lineups – to support the robbery charges against him. Pikett denies this and says that he is immune.

The plaintiffs' lineups occurred in 2007. At that time, dog scent lineups were legally viable, with or without additional evidence.[1] Prior to 2007, Texas courts had reviewed both Pikett's experience and methodology. Based on his personal qualifications, the qualifications of his dogs, and the objectivity of the lineups, courts recognized him as a dog scent lineup expert and his reports were often used.

The Constitution does not require an error-free investigation – negligence is not a constitutional tort. It does not, however, protect officers who conduct reckless investigations and ignore exculpatory evidence.[2] Fabricating evidence denies the procedural safeguard guaranteed to all people; it completely undermines the justice system.

The plaintiffs have not offered sufficient evidence to show that Pikettt's lineups were fraudulent. First, the dogs were on a leash, and Pikett could have used it to cue them. Second, the cans in the lineups were open, and Pikett could have possibly seen the scent pads inside and

---

[1] *See Robinson v. State*, No. 09-06-051, 2006 WL 3438076, at *4 (Tex. Ct. App. Nov. 29, 2006); *Winston v. State*, 78, S.W.3d 522, 527-28 (Tex. Ct. App. Mar. 28, 2002).

[2] *Bibbins v. City of Baton Rouge*, 489 F. Supp .2d 562 (M.D. La. 2007).

determined which one belonged to the suspect. Third, the scents ranged from one to sixteen months old, and they might have been too weak for the dogs to identify. These facts, however, do not amount to a wrongdoing. Conclusory assertions founded on mere possibility do not carry evidentiary weight.

Douglas Lowry, Curtis's expert, says that this information is sufficient to show that Pikett manipulated the lineups. Although he is experienced with canines and manhunt searches, Lowry has no training and has never conducted a dog scent lineup. He has twice testified at trial about the unreliability of Pikett's method, and in both cases, the charges against Pikett were dismissed.

The plaintiffs and Lowry have competing theories. The plaintiffs say that Pikett watched someone assemble the lineup so that he knew *before* he conducted it which can had the suspect's scent. Lowry says that Pikett looked down while he walked the dogs during the lineup so that he could see inside the cans and determined *during* it which one had the scent pads. Lowry also contradicts himself. He says that the dogs never actually gave an alert, yet he accuses Pikett of cuing them to give an alert at the suspect's can.

Pikett denies knowing which scent pad belonged to Curtis and cuing the dogs. The plaintiffs admit that, while dogs will not be successful all of the time, dog scent lineups may be acceptable for investigations.[3] That Pikett has been wrong in a fraction of his lineups is not evidence that he falsified results. Although Lowry makes a compelling argument about the quality and accuracy of the lineups, Pikett's possible negligence or his dogs' possible mistakes do not amount to a violation of constitutional rights.[4]

The plaintiffs contradict themselves by arguing that Pikett knowingly falsified the results or, in the alternative, that he conducted ignorant, grossly unreliable lineups. They have no facts to support their allegations – only animosity for dog scent lineups in general.

At the time of the lineups, Texas courts had consistently recognized Pikett's methods and expertise as part of a reasonable investigation. The courts have only recently rejected the use of dog scent lineups. Even if an innocent person had been convicted with unreliable evidence, that would not change the legality of having used dog scent lineups in prior cases. The plaintiffs have not shown that Pikett knowingly conducted unreliable or fraudulent lineups.

---

[3] Dkt. 149, Ex. C ¶ 10.

[4] Dkt. 144 at 2.

Their claims are conclusory and unsupported. Speculation – without facts – cannot bridge the gap between the their assertions and reality.

5.  *Stivers.*

Curtis says that Stivers helped fabricate evidence to unlawfully arrest and prosecute Curtis. Stivers denies this and says that he is entitled to immunity.

  A.  *Immunity.*

Stivers and Pikett have consistently denied that the lineups were fraudulent. Stivers knew that the courts had recognized Pikett as an expert in dog scent lineups since 2002, and that his lineup results and testimony had been used by others. Stivers had personally used Pikett in two other cases and was able to obtain convictions.

Vic Wisener, assistant district attorney from 1987 to 2007, says that he had notified the police in Houston that "dog scent lineups and their mastermind, Defendant Pikett, were a fraud." He also sent an e-mail with a similar message to all prosecutors. No letter to the Houston Police Department has been produced and, upon review, the message to the prosecutors mentions only two officers who are not defendants in this case. It says nothing about Pikett or the scent line-ups.[5] The plaintiffs have offered no evidence – only their own self-serving statements – to support their claims.

Stivers did not violate anyone's rights when he asked Pikett to help him "close" the case. He is a police officer – it is his job to solve cases. A police force could not function without reasonable reliance on the statements and efforts of others.[6] Dog scent lineups were legally recognized as a reasonable step in an investigation. Stivers acted fully within his rights as an officer when he requested a lineup using Curtis's scent. No evidence supports Curtis's assertions that Stivers knew that the lineups were fraudulent, that this was the reason Stivers sought out Pikett's assistance, or that Stivers knew that the scent evidence collected for the lineup had been contaminated or degraded beyond use.

Because there is no evidence that the otherwise legal scent lineups were falsified or fraudulent, Curtis has not asserted a constitutional violation.

---

[5] Dkt. 89, Ex. 2.

[6] *Whiteley v. Warden*, 401 U.S. 560, 568 (1971).

B.     *Breaking the Chain.*

Curtis has not shown that it was unreasonable to request a warrant for his arrest. The facts show the opposite – the district attorney accepted the complaints against Curtis, a magistrate found probable cause against him, and two grand juries issued indictments against him.

Curtis was not indicted on the dog scent lineup alone. He was first arrested in the parking lot of a phone store around the time of the attempted robbery. He was carrying a crowbar similar to the size of the one used to pry open the store door. He had an extensive criminal record, and Stivers believed that he resembled the robber caught on the videotape robbing another phone store.

Curtis has contested only his resemblance to the man on the tape, saying that Stivers lied about it. This is not evidence – it is a diversion of personal opinions. Stivers was not the only one to find a resemblance. Stills taken from the video and Curtis's photo were shown to the district attorney, magistrate, and grand juries. The evidence identified by Striver and the findings of these intermediaries insulate him from Curtis's claims.

6.     *Anthony & Chappell.*

A.     *Immunity.*

Johnson and Bickham say that officers Anthony and Chappell conspired together to knowingly use Pikett's "junk science" to frame them for the murders. The officers deny this. They say that the lineups were valid and viable, and they claim immunity.

The law on dog scent lineups in Texas in 2007 and 2008 was consistent and clear – they were an acceptable step in an investigation, and Pikett was a recognized expert in conducting them. Johnson and Bickham have not shown any evidence that Anthony and Chappell knew that Pikett's lineups were fraudulent or that they conspired to do – or did – anything to falsify their results. Although Johnson and Bickham say that Wisener told the officers that Pikett's lineups were a fraud, they have offered no evidence that Wisener, or anyone else, advised the officers of this. Both officers admit they were not trained in scent lineups, but speculating about what they should have known about the age and the utility of the scent samples is not evidence.

Johnson says that he looks nothing like the still taken from the video. Johnson is five feet, seven inches and weighs 265 pounds. One man in the shot is clearly not him – the man

is tall and skinny; the other is shorter and heavy set. It is reasonable that the officers saw a resemblance between the second man and Johnson. A police force could not function if its officers could not rely on their personal judgment. Saying that there is no resemblance is not sufficient evidence to undermine Anthony and Chappell's decision.

> B. *Coerced Testimony.*

Johnson and Bickham say that the officers coerced Samuels into implicating them in the murder and corroborated the results of the dog scent lineups. They have no evidence to support their accusations. The officers did not perform a lineup of Bickham's scent until after they had spoken with Samuels. Their claim that his testimony was coerced to corroborate the lineup is fatally flawed. Samuels contacted the district attorney saying that he wanted to speak with him, and his lawyer was present every time he met with the officers.

When Samuels later recanted his statements and confessed to the murders himself, he told the investigators and the district attorney that he was only confessing because he had been repeatedly assaulted in prison for talking about Johnson. His reasons for rescinding his statements are irrelevant. His confession – not the dog scent lineups or their arrests – prompted Johnson and Bickham's release.

> C. *Breaking the Chain.*

Based on the witnesses, photos, and dog scent lineups – and for Johnson, his inconsistent alibi – it was reasonable for Anthony and Chappell to request warrants for Johnson and Bickham. They have offered no evidence that the officers knew that the lineups were fraudulent or coerced incriminating testimony from witnesses.

The district attorneys for Harris County accepted the complaints against Johnson and Bickham, two magistrates found probable cause against them, and two grand juries issued their indictments. The actions of these intermediaries broke the causal chain, insulating Anthony and Chappell from liability.

> 7. *Houston & Fort Bend.*

The plaintiffs say that the Sheriff's Office in Fort Bend County violated their rights by having a policy that allows for wrongful arrests and convictions on "profoundly flawed

investigations and fabricated evidence."[7] They say that Houston is liable because its deliberate indifference allowed this policy to flourish under its police department and its officers.

### A. Policy.

The plaintiffs have offered no evidence – only baseless suspicions – to support their accusations against the city and the county. Chief Michael Dirden, an executive assistant for the Houston Police Department, and Gregg Bisso, a senior officer, say that the department neither trained officers to conduct dog scent lineups nor did it have a policy for using them during investigations. Its only official canine policy involves dogs who track people.[8]

The plaintiffs say that the *absence* of a policy or procedure on dog scent lineups – on training or a mechanism for oversight or punishment – is itself evidence of such an ad hoc policy. This argument is wholly without merit. Under that logic, the absence of a policy against any wrongdoing would be an implicit endorsement. It is illegal for officers to falsify evidence – to force police departments to have individual official policies against every form of illegal conduct for municipalities to escape liability for misconduct would be both absurd and redundant.

Although Dirden and Bisso admit that some officers used dog scent lineups in investigations – predominately to corroborate other findings – the plaintiffs' claims are limited to a policy of using *fraudulent* or *knowingly unreliable* lineups. There is no quantitative evidence to show how often scent lineups were used, and a complete lack of evidence that fraudulent or inaccurate lineups were ever used intentionally in this or any other case. Without evidence of such a policy, de facto or formal, the city and county cannot be liable.

### B. Damages.

Even if the plaintiffs had shown the existence of such a policy, they are not entitled to damages when there is no proof of a violation of a constitutional right.[9] Stivers did not violate Curtis's rights, and Anthony and Chappell did not violate Johnson's and Bickham's rights.

---

[7] Dkt. 140 at 10.

[8] Dkt. 140, Ex. 13 at 2-3; 14 at 1-2.

[9] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

8.  *Wright.*

Sheriff Milton Wright was not personally involved in the incidents that led to this lawsuit. The plaintiffs have not shown any specific facts about Wright's personal involvement – that he encouraged a policy of using dog sniff lineups, fraudulent or otherwise – other than the recitation of his official title. Without this showing, they cannot sustain an individual capacity claim premised upon vicarious liability or respondeat superior.

The plaintiffs say that Wright's lack of oversight of Pikett was tantamount to enforcing a policy of fraudulent lineups. It is illegal to fabricate evidence. A valid police policy could not violate the law. It was not necessary for Wright to have an explicit policy expressing this for every investigatory tool – Pikett, and every other police officer, was aware that falsifying evidence during an investigation was illegal. Even if the plaintiffs had proven that Wright enforced a de facto dog scent lineup through his lack of oversight, they still have not shown any evidence that the lineups were fraudulent or falsified.

9.  *Discovery.*

This complaint was filed in November of 2009 – it was vague and wholly unsubstantiated. Since filing, the plaintiffs have not offered one shred of evidence to support their claims. Allegations are not equivalent to facts. They have cited to pages and pages of case law with elaborate quotations in place of actual evidence. They have attacked officials for their subjective opinions as if they were rebuttable facts vulnerable to objective scrutiny.

The plaintiffs say that their Rule 56(d) affidavit establishes a right to discovery before the adjudication of the sufficiency of the evidence. They say that this rule applies because the defendants have suppressed incriminating evidence about the falsification of evidence and its intentional use against innocent people. Their allegations are wholly conclusory and completely mischaracterize the intension of the rule. The plaintiffs are attempting to support their speculatory claim with further speculatory claims – enough is enough. Rule 56(d) is intended for situations where the non-moving party, for *specified reasons*, is unable to present essential facts and requires supplemental time for discovery. It is not meant to prolong discovery indefinitely, especially when, as here, the plaintiffs' claims were completely unfounded to begin with.

A party must be given a full and fair opportunity to discover essential information. The plaintiffs say that they cannot support their claims with actual facts because they have not been

allowed to conduct discovery. This is simply not true. They have been granted ample discovery:

- Copies of Houston's homicide investigative report in chambers
- Video of Johnson's dog scent lineup
- Still and videotapes of the convenience store purchases and glossies of the crime scene photographs with the gasoline can
- Un-redacted copy of the homicide investigative report, including continued investigation notes after the plaintiffs were released from jail
- List of cases in which Chappell had used dog scent lineups, e-mails between he and Pikett concerning the lineups, the information provided to Chappell by Pikett about his lineups
- List of cases in which Anthony had used dog scent lineups
- Audiotaped and transcribed copy of Samuel's statement, his letter to the Chief of Police, his criminal history, his earning statement, and his letters to the Harris County prosecutor
- All e-mails between Pikett and members of the Houston Police Department for a specific period of time
- Affidavits of Anthony and Chappell about their use of dog scent lineups
- Affidavits of Bisso and Dirden about their knowledge of dog scent lineups and Pikett and their certification records
- Videotape of Bickham's dog scent lineup
- List of all dog scent lineups occurring in the Homicide Division, Investigative Response Division, Robbery Division, and Burglary and Theft Division of the Houston Police Department
- Compilation report of other divisions within the Houston Police Department for a specific period of time

The plaintiffs have had sufficient opportunity for discovery; they have come up empty handed. They have also not offered a plausible reason why they could not identify the other officers who they say were involved in the alleged misconduct. Simply speculating that there are other officers is not sufficient. The plaintiffs have had the opportunity to conduct meaningful discovery; no further discovery will be granted.

10. *Conclusion.*

Ronald Curtis, Cedric Johnson, and Curvis Bickham have no evidence to support their accusations. Ronald Curtis, Cedric Johnson, and Curvis Bickham will take nothing from W. Anthony, R. Chappell, C.W. Stivers, Milton Wright, Keith Pikett, Fort Bend County, and the City of Houston.

Signed on December 18, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge